CHARLES STETSON, appellant, *vs.* CITY OF BANGOR.

*Dedication of way—when the way terminates on a navigable stream presumed to extend to low-water mark.*

Where riparian proprietors have laid out and sold their land in lots as delineated upon a plan having streets indicated thereon, terminating upon a navigable stream, such streets will be considered as dedicated to the use of purchasers of such lots and of the public, down to the water at all stages of the tide, unless there be some express reservation of the flats, although the lines upon such plan, indicating the boundary of the tier of lots nearest the river, be drawn at high-water mark.

The conversion of a way dedicated to the use of purchasers of adjoining lots into a public way does not authorize the award of more than nominal damages.

ON APPEAL from the decision of the city council of Bangor, awarding a dollar damages for extending Hancock street from high-water mark, over the flats, to the margin of the wharf on Kenduskeag street, under c. 465 of the Special Laws of 1870.

The only contest was, whether nominal or substantial damages should have been awarded upon the following facts, proved or ad-

mitted, viz.: Kenduskeag stream is a navigable stream, the tide usually flowing from fifteen to twenty feet at the point in controversy; the street as now laid out extends from high-water mark, over the flats, to the wharf line established by the city under the authority of the legislature. In 1801, the proprietors of the land, lying at the junction of this stream with the Penobscot, caused a plan thereof to be made, dividing it into lots and streets, of which Hancock street was one; and all the lots delineated thereon have since been sold according to the streets and numbers so laid down. One of these proprietors presented a copy of this plan to the inhabitants of Bangor, assembled in town-meeting, and it was there voted to accept the roads laid down upon it, returned by the selectmen, who subsequently made such return, but omitted to mention Hancock street therein. Upon the plan the line indicating the water-front of the lots was drawn at or near high-water mark, and the delineation of Hancock street terminates at that line. It was shown that the public had used the flats, over which this extension is now to be made, as a landing-place for more than forty years, and that the street commissioner had assumed to control its condition; and, on the other hand, that one of the proprietors had, without molestation, used a part of it temporarily while engaged in building in that vicinity, and, upon another occasion, had forbidden its use to a citizen.

*A. W. Paine,* for appellant.

Damages are to be paid unless some reason exists for their denial. The question is, whether plaintiff is entitled to actual damages, or only to the nominal sum awarded him; this depends upon another, which is the real question, whether or not the public had an easement over the flats taken by the city.

There was no previous laying out; hence, if the public have such right, it exists by dedication or by prescription.

1. As to dedication. The purchasers of lots had the right to use the streets delineated on the plan; nor is it contended, that, when the city adopted these streets, the proprietors were entitled

to more than nominal damages; but the question is, whether the premises now taken, below high-water, were by the plan designated for a street. This must be determined from the plan alone, which fixes the water-line at high-water mark for the lots and for Hancock street, while York street is carried beyond this point. The proprietors had no right to extend the streets into tide-water however. *State* v. *Wilson*, 42 Maine, 25. Nor was there any necessity for it, since the public have a right to go over the flats for travel and landing. Hancock street never was adopted by the city until this action was taken, under express authority of the legislature, which was unnecessary, if the right to extend it into tide-water already existed.

2. As to prescription. All the user shown has been connected with the navigation of the stream; to land lumber, etc., etc. By common law the flats, belonging to the commonwealth, are not subject to prescription. Colonial Laws, c. 63, p. 148;. *State* v. *Wilson*, 42 Maine, 9; *Com.* v. *Alger*, 7 Cush. 53.

The street commissioner used the flats only as any other citizen might. His acts, unless there has been a previous laying out, do not affect the town. *Gilpatrick* v. *Biddeford*, 51 Maine, 182, and 54 Maine, 93; *State* v. *Bradbury*, 40 Maine, 154, 157.

This was a 'landing-way,' which is 'more than a highway,' 42 Maine, 27, and cannot be acquired by prescription. *Bethune* v. *Turner*, 1 Greenl. 111; *Littlefield* v. *Maxwell*, 31 Maine, 134; *Coolidge* v. *Learned*, 8 Pick. 504; *Pearsall* v. *Post*, 20 Wend. 111.

*A. G. Wakefield*, for appellee.

KENT, J. The case before us is much simplified by the admissions made by the counsel for the appellant. He admits that by the proceedings of the owners, in the early part of this century, in causing their land to be run out into lots and streets, and a plan thereof to be made, and afterwards selling lots according to that plan, they gave a right to the grantees to use those streets, and to have them kept open as such. And he does not deny that when

the city afterwards assumed to appropriate and lay out such street as a public way, the owners of the fee were barred from recovering more than nominal damages. His reasons for this conclusion are clearly stated, and are more fully quoted at the conclusion of this opinion.

We think it clear that on the facts proved and admitted, the counsel is fully justified in making these admissions, and that in doing so he shows a very commendable spirit of fairness and good sense, and is enabled thereby to bring his own argument directly to the real question in issue. He states the question on this part of the case thus,—' the simple question is, whether the premises, now taken below high-water mark, were by the plan appropriated for a street.' Perhaps a more exact statement of the question would be,—what was the extent of the dedication made by the owners, as shown by their plan, by their deeds, and by the facts connected with the subsequent use and occupation? It being admitted that as to the upland embraced within the lines of Hancock street no damages, certainly none beyond nominal, can be rightfully and legally claimed, the question is, whether any damages, or any beyond nominal, can be claimed for the taking of the land below high-water mark, for the purpose of establishing Hancock street as a town way, under the recent act of the legislature. As before stated, that must depend upon the extent of the dedication.

The appellant claims a right to full damages, as the absolute owner of the unincumbered fee. This claim rests upon the assumption that by no acts of theirs the original proprietors lost any of their absolute and unqualified right to own, possess, and use the flats. It is not questioned that if there was any dedication reaching the flats it was of a right of way, like that on the upland.

In order to ascertain the intention of the owners, all the facts must be taken into consideration. The quantity, location of the whole plat,—the purpose and intent of the owners in thus laying it out into small lots on the rivers, and into larger ones on the land more remote,—the streets designated, and the purpose in view in

thus laying them down. No one can doubt that the leading object of the proprietors was to make such a location, and such a plan, as should offer inducements to purchasers to invest in these lots. It is evident that the sagacious owners foresaw that these shore lots, particularly, would be, in time, occupied by blocks of stores, each lot having its share of the flats in front. They also saw that if they limited the streets on the plan to Poplar or Exchange or Washington streets, there would be no access to the stream or river by the public or by the owners of the lots. They therefore extended the seven or more streets to the water, on the plan which was presented to the town. It is admitted, as before shown, that this was a good dedication, binding the owners of the land to high water. But what was the great value or use of these streets, or ways, or docks, except to connect the upland with the river, so that the two highways might be made continuous ?

It is urged that the line drawn on the plan is that of high water, and that therefore the dedication could not extend beyond that point. But it is to be observed that this line of high water is the same on all the lots, and was adopted to designate the line between the upland, or dry land, and the river. And yet there can be no doubt that the flats in front of the lots were not reserved by the owners (although it was competent for them to convey only the upland), but passed by the colonial ordinance to the persons who bought the lots by the plan. But strictly measured they do not extend beyond high-water mark on the plan. There is no line drawn across these streets at the stream to indicate a termination of the street or way at that point. We think that the true construction of the plan and deeds referring to it is, that the Kenduskeag stream and the Penobscot river were adopted as the boundary lines ; or, in other words, that so far as these streets are in question, it was the intention to make a direct and unbroken connection between the street and the river at all times of the tide.

The Penobscot river and the Kenduskeag stream are both highways, over which the public have a right to pass and repass with

boats, vessels, or rafts. But they would not have a right to land and to use the upland as a way or road to transport their water-borne goods, without the assent of the owner of the land. These proprietors, we think, intended to give by dedication this right. This is admitted as to land above high water. But that right would be of very little use or value, if it could be only exercised when the tide was at the exact point of high water. If no part of the flats could be thus used there could be such use only twice in twenty-four hours. And further, as we understand the claim on which the appellant rests, he might close all connection between the two highways by building a wharf or stores over the whole parcel of land or flats in front of the lines of the street. Could this have been the intention of the donors?

The case of *People* v. *Lambier*, 5 Denio (New York), 9, was a case where a street had been laid out to East river. It was held that the river was a highway, and that there was a continuous public way upon the river, as well as on the street to the river, and that the public had a right to this connection or continuation; and where an owner, authorized by statute, erected a bulk-head and other works and filled in with earth between the former termination of the way and the river, that the way was extended over these new erections and this filling in. Or, in brief, that the clear intent was, that the street should, at all events, reach and connect with the other highway on the river. See also, 4 Paige, Ch. Rep. 410.

The case of *Barclay* v. *Howell*, 6 Peters, 512, involved some principles applicable to this case. One of them is thus stated by the court: 'It is admitted by both parties that the river Mononga-hela, being a navigable stream, belongs to the public, and a free use of it may be claimed by the public, whatever may be the extent of its volume of water. If Water street be bounded by the river on the south, it is only limited by the public right. To contend that between this boundary and the public right a private and hostile right could exist would not only be unreasonable, but against law.'

The proprietors having sold all the lots according to the numbers, and according to the plan which contained all these streets, the purchasers have a right to have these streets kept open and unincumbered. The proprietors impliedly covenant, or certainly are estopped from denying, that the streets are to be kept open, and that they are not to be appropriated by any act of theirs to private use. This proposition is not denied. But it is denied that this right extends beyond high-water mark to the individual purchaser of a lot, even of the lots on each side of the street. This construction would diminish the value of all the lots, and of these corner lots more than of the other lots. We think that the manifest intent was, that these docks or streets not only reached the line of high water, but that it was the intention that the stream should be the limit, and that the purchasers should always have an open dock or way on one side of their wharves or lots. They must have so understood the plan. We should require the most conclusive and absolute evidence of the existence of a reservation, which would allow the proprietors selling these lots by that plan to erect the next week a wharf covering the whole flats, and excluding any connection with the stream as a highway or landing-place, or as an open dock, before we could yield to such a result.

Proof of user by the public is competent evidence in determining whether a dedication has been made. *Mayor, etc., of Jersey City* v. *Morris Canal*, 1 Beasley, 583. In the case before us, the report finds such user for forty to fifty years for a landing-place to haul out lumber, timber, wood, etc., which was transported over the street to different places in the city. The street commissioners, since 1857, have exercised a care over it, working upon it, and filling out with earth so as to make it passable to get to low water,—removing obstructions on it and also a building erected without authority, and facilitating such egress and ingress by erecting wharves with suitable slips. No opposition was made to the doings of the street commissioners. Although the street was sometimes obstructed by timber and lumber, hauled out of the stream, yet a passage-way was always left to the stream, and the

street commissioners gave notice to the owners of such timber to remove it, and in case of neglect caused it to be removed, exercising the same care over this street as over other streets in the city.

The single act of Zadoc French, one of the original proprietors, in undertaking to monopolize the use of the slip, or as much as he wanted for his building materials, when erecting the Penobscot Exchange, cannot overcome the effect of this long-continued use by the public. It was only a claim to use it temporarily for his own private purposes, and was more than forty years ago. It was not followed up. It was not a formal entry to assert title for himself and other owners. If there had been a dedication, he could not revoke it by such an act, and he was but one of the three owners. And the same remarks, or most of them, apply to the deed made by Amasa Stetson, another proprietor, in 1834. But this deed is a simple release of all right, title, and interest which the grantor then had in the premises. It does not purport to convey the land, but merely the then existing right in the grantor, if any. If he had before parted with his right by dedication or by conveyance, he could not, and he did not undertake to convey anything by this deed. It has been decided by this court that such a release does not convey the land itself or any particular estate in it, but simply and only the actual right or title, which may be then in the grantor. *Coe* v. *Persons unknown*, 43 Maine, 432.

The deed, however, is significant, as showing the understanding of this original grantor, or donor as to the original intent of the proprietors. It speaks of it as the extension of Hancock street to said stream, and as being the slip or dock at the bottom of Hancock street, as laid down on this plan. Then follows a condition that the grantee is not to obstruct it by buildings, but 'the same is to be kept open as a wharf or street way from said Poplar (Exchange) street to Kenduskeag stream.' This clearly shows that Amasa Stetson, under whom the appellant claims, understood that there was a slip or dock, and that the way was to be kept open and free to the stream, thus, at all events, connecting one highway with the other.

The appellees do not claim any prescriptive right by reason of this public use of the flats for more than twenty years. It was decided in *State* v. *Wilson,* 42 Maine, 9, that the public having a right at common law to pass over the stream as a highway, no adverse right could be acquired by a rightful and legal user. But this uninterrupted and unresisted use of this dock or slip as a continuation of Hancock street, by the public for so many years, is a fact to be duly estimated in determining the question of dedication and of the extent of the dedication.

We return to the single point on which the decision of this case must rest. A dedication or appropriation to some extent being admitted, the question is, did it end at high-water mark?

Our conclusion is that it did not. We think the intent was to connect the two highways, and to make the margin of the stream, at all states of the tide, the point of connection, and thus authorize the use of the flats, as they have been used by the public as a part of the way.

The way being thus dedicated, the right of the public to use it did not require any special laying out by the public authorities, so far as the rights of individuals were in question. But it was perhaps thought that the assent of the legislature was required to lay out a street over these tide-waters, and that such laying out would mark more exactly the lines and give greater confidence to the authorities in acting in reference to this street.

But at all events, it could not operate to the injury or loss of the owners of the soil. It is to be remembered that the question before us is not as to the legality of such laying out, but as to the damages to the claimant, assuming, as he does in the case, that the laying out was legal.

His counsel admits that if the land had been dedicated, even if the dedication had originally been only in favor of that part of the public who had become purchasers of the lots on the plan, yet 'the law would give the proprietor no damages for extending that right to embrace the whole public; for as a mere owner of the soil, no,

damage is occasioned by this enlargement of the use.' This is well-settled law, and good common sense.

The facts stated in relation to the mode adopted by the city to make this use available, cannot be properly considered in this case, as the question here relates solely to the damages for taking the land for a street. If the authorities do not keep it properly as an open way, it is a matter for the public, or for those using it, to remedy by indictment or otherwise.

The result is that the appeal is dismissed.

APPLETON, C. J.; CUTTING, WALTON, BARROWS, and TAPLEY, JJ., concurred.