STATE OF MAINE
SOMERSET, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-13-42

KENNETH ROGERS, et al.,

      Plaintiff

v.

**ORDER**

JAMES E. TYVOLL, et al.,

      Defendant

Before the court is Plaintiffs' complaint for declaratory judgment, trespass, injunctive relief, and damages. An evidentiary trial was held before the court without a jury.

The court finds the following. In 1989, the Hughes Lumber, Inc., held title to the west half of Township 4, Range 16, known as the Elm Stream Township. In the Fall of that year, Hughes Lumber subdivided the Township into lots and recorded in the Somerset Registry of Deeds a plan prepared by A.B. Sturgeon, a licensed surveyor, a plan titled "A Proposed Division of Land of West Half of Township 4, Range 16 for Hughes Lumber, Inc.," dated September 30, 1989 ("the Plan"). The Plan was recorded in the Somerset County Registry of Deeds, Plan File B-89, page 165. This Plan identifies a series of large lots labeled "A" through "N" and additional lots known as "out lot" and "b/o lot 1." The Plan also contains

1

a system of roads. The notes contained on the Plan indicate it is based upon a survey plan by J.W. Sewall, that all roads, streams, and ponds were digitized from an aerial photograph dated August 1981, all distances, bearings, and acreages are approximate, and finally, in note number 4, "all roads used as property lines and used to provide access to other lots are to be sixty-six foot right-of-ways."

All of the Plaintiffs and the Defendants own parcels of land shown on the Plan, although some of the lots have been further subdivided since the Plan was recorded.

In their complaint, the Plaintiffs assert that they, as well the Defendants, have the legal right to travel over all the roads located in the west half of Township 4, Range 16. Some deeds related to specific easement rights expressed. All the parcels of land are based upon deeds from Hughes Lumber or its successor making specific reference to the lot titled as it appears on the Plan. Therefore, all of the rights of the parties are based upon such lawful benefits as are conveyed to them by the terms of the Plan as incorporated by implication in their deeds, if not expressly recited. [1]

Defendants Paul Beaulieu and Marjorie Beaulieu acquired title to land in the Township by deeds describing 50 acres of Lot H, a portion of the east half of Lot E, Lot G, one-half interest in Lot D and a 29/500 in interest in the remaining Lot

---

[1] It is jointly stipulated that all persons named in this litigation have in their respective chains of title a direct or

2

#H, all in reference to the Plan. In 1995, the Beaulieus conveyed their holdings in the Township to the Marjorie Beaulieu Revocable Trust and the Paul H. Beaulieu Revocable Trust of 1999 reciting all of the previously acquired properties. .

Defendants James E. Tyvoll and Angela J. Tyvoll acquired title to Lot I and a portion of Lot G, both in referebce to the Plan. In 2014, James and Angela Tyvoll conveyed to Trustees of the "Tyvoll Family Revocable Trust Agreement of December 19, 2014," a portion of Lot G and Lot I. Defendant Lillian Brooks acquired title to a portion of Lot L, in reference to the Plan.

It is the position of the plaintiffs that all persons owning property in the western half of Township 4, Range 16, derive their title from deeds designating lot numbers in the recorded plan. As such, the Plaintiffs aver that each lot owner acquired rights with respect to the roadways delineated on the Plan. It appears undisputed that at the time of the recording of the plans, all roads on the plan were in actual existence on the ground in one form or another given the remote rural character of the area.

In October of 1993, the Beaulieus made their first attempt at closing one of the roads on the Plan known as Daisy Lane. They did so by erecting a gate made of steel I-beams. Over a period of time, locks and chains on the gate were destroyed. In expressing their concerns to Bart Hughes, a representative of Hughes Lumber, they claim they were advised that if they owned both sides of Daisy Lane,

they would have title to the road and therefore could close it to outside trespassers.[2] In reliance on that alleged statement, they acquired the property on the opposite side of the Lane. At this time they placed large boulders in the Lane to obstruct traffic. This was accomplished during 2010 or 2012 according to the testimony of Marjorie Beaulieu. Those obstructions remain to this date.

Defendant Lillian Brooks was bothered by persons breaking into her buildings. Several years ago, in conjunction with Defendant Tyvoll, she placed a chain across what is known as the Tyvoll Road, a road appearing on the plan. This latest chain was put in place two years ago. When Defendant James Tyvoll purchased a portion of Lot G and Lot I in 1981, he first placed a gate at the T of the Loop Road and the Tyvoll Road. He noticed in 2010 that his gate was moved to another location where it now exists.

In all instances there is a common theme by Beaulieu, Tyvoll, and Brooks in that they wish to protect their property. They wish to prevent access to their lands by others. Hunting and other lawful activities have caused vandalism, waste and most of all, disturbed the peace and enjoyment of the owners who wish to be free to have privacy and to enjoy their property alone. It is undisputed that the defendants have suffered damage as a result of persons coming on their property who may not have the right to do so. However, this case is limited to the issue of

---

[2] Denied by Hughes.

4

the ability of defendants, or any other property owner in the Elm Stream Township, to deny access to any of the roads within the Township, currently delineated on the Plan to which reference is made in each parties' deed.

This case is governed by two very old and well established principles of law. The elements of rights in land by grantees from deeds making reference to a recorded plan and the viability and effect of oral evidence contradicting the terms of a deed of land.

In 1878, the Maine Supreme Court, in the case of *Bartlett v. Bangor*, 67 Me. 460, established that, "a sale of lots with reference to such plat . . . will amount to an immediate and irrevocable dedication of the latter, binding upon both vendor and vendee . . . ." The case established an easement of way or right of passage and the right of using the way for every purpose that may be usual and reasonable "for the accommodation of the granted premises." The Court went on further to say, "and such a right of way is not lost by mere non-use." Citing a Massachusetts case concluding that a conveyance of land bounded by a street not defined in the deed, "but shown upon a plan therein referred to, estopped the grantor to deny the existence, not only of that street, but of all the connecting streets laid down on the same plan . . . ." In addition to those locations, the Court held that the plan not only established the courses and distances, "but all other particulars, appearing

upon the plan, are to be regarded as if they had been expressly recited in the deed."

The Court makes clear, citing earlier cases,

> And it has been decided in this state, as well as other states, that when the owner of land makes a plan of it, delineating thereon a street, with building lots adjoining, and then sells one of those lots by a reference to the plan, he thereby secures to the purchaser a perpetual and indefeasible right of way in the street . . . .

Citing *Sutherland v. Jackson*, 32 Me. 80; *Stetson v. Bangor*, 60 Me. 313.

In the context of the circumstances of this case, it is important to realize the rights of the owners of the land over which the road or street travels. "When we speak of a road or way, there are two distinct rights of interest which naturally present themselves to the mind -- the fee in the land itself, and the easement or use (public or private) which may be made of it for the purposes of travel and transportation. The owner of the fee may put the land to any use not inconsistent with the enjoyment of the easement that exists in it." *Kuhn v. Farnsworth*, 69 Me. 404 (1879).

As late as 2004, in a case making reference to an 1887 Colby and Stewart Atlas received into evidence which was deemed to be "competent historical evidence of the presence of the right of way on the face of the earth," the Court made clear that,

> A grantee who acquires property by reference to a plan acquires a private right-of-way in proposed streets delineated in the plan. 'The right of way in the proposed streets acquired by a grantee under such circumstances is an "easement by implication based upon estoppel."

6

Such an easement is not based upon a dedication to the public. It is a private right in no way dependent upon a prospective public use.

*Murch v. Nash*, 2004 ME 139 (citations and quotation marks omitted).

In 1951, the principle was reinforced in the matter of *Arnold v. Boulay*, 147 Me. 116, in which the Court, citing earlier precedent, stated the principle,

Whenever the owner of a tract of land lays it out into blocks and lots upon a map, and on that map designates certain portions of the land to be used as streets, parks, squares, or in other modes of general nature calculated to give additional value to the lots delineated thereon, and then conveys those lots by reference to the map, he becomes bound to the grantees not to use the portions so devoted to the common advantage otherwise than in the manner indicated . . . . . The object of the principle is, not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated.

The second part of this principle relates to the rights of the owners of the lots so received by reference to a plan, or "[i]n this State a grant of land bounded on a highway carries the fee to the centre of it, if there be no words to show a contrary intent." The case notes that, "a grant of land bounded on a street, the soil of which belonged to the grantor, though it did not convey the fee in the street by the terms of the grant, yet the grantee acquired a right of way on the street by implication or estoppel." *Sutherland v. Jackson*, 32 Me. 80 (1850).

The principle of the prevailing law is stated in the Restatement (Third) Of Property: Servitudes § 213, titled Servitudes implied from map or boundary reference. That describes the principle as, "if a grantor owns an estate in part or all

7

of the street or way, the conveyance usually includes title to the center of the street, subject to the rights of others to use the street, as well as an easement to use the balance of the street." (Cmt. a). The reference goes on further to establish that "the purchaser of a lot and a subdivision acquires rights to use all the roads, parks, beaches, open spaces, and other areas designated on the plat for common use and enjoyment. With respects to roads, the implied servitudes ordinarily extend to all roads shown on the plat . . . ." (Cmt. c).

In 1996, an associate professor at the College of Engineering at the University of Maine, who was also a land surveyor, civil engineer, and attorney, along with a partner in a surveying firm in Maine, authored a treatise in the Maine Law Review on roads and easements. Under the heading of Boundaries of the Easement, the authors discuss the manner in which the width of the road easement is to be determined:

> Perhaps more troublesome is the common practice of using the statutory width of three rods for public road easements in all circumstances without consultation with the operative records. It is no surprise to practitioners who make a habit of examining the records that many, if not most, public road easements are not three rods. Four rods is a more common width—about two or two and a half rod widths are not uncommon.

Knud E. Hermanson & Donald R. Richards, *Maine Roads and Easements*, 18 Me. L. Rev. 286 (1996). By law, a rod is 16.5 feet in length. Consequently, it is clear and unambiguous that Hughes Lumber Company specifically set the width

of the roads on the plan, whether developed to the full extent or not, at four rods in width. As such, it appears to the court be unequivocal that the roads are to be used by all persons receiving a deed with reference to the Plan and that no evidence should effect that conclusion of law. It is important to remember that the right to use the roads in the nature of an easement is not title to the land contrary to those holding deeds to property on each side. It is best described by the Law Review authors as follows:

> Many people fail to understand or forget that the easement is not a possessory title—it is an encumbrance on the fee simple title. The easement is similar to a blanket on the ground. The blanket may be used by one or more persons, but the ground beneath the blanket is owned by some other person.

Knud E. Hermanson & Donald R. Richards, *Maine Roads and Easements*, 18 Me. L. Rev. 209 (1996) (emphasis added). This, further, does not indicate a modification of the rights of the land owner over which the easement is located. The title holder may utilize the land in any lawful manner that does not interfere with the rights of those acquiring easement rights to pass and repass.

The prevailing common law in this case is not affected by 23 M.R.S. § 3031, which recites the common law with regard to "paper streets." This simply puts a time limit for such roads to continue to be "paper streets".

If the purposes of an express easement are not specifically provided, they are to be determined by the presumed intent of the parties at the time the grant is made.

9

The parties presumed intent must be determined in light of the circumstances surrounding and leading to the execution of the deed. *Saltonstall v. Cumming*, 538 A.2d 289 (Me. 1988).

It is well established law that presumptively the adjoining land owner owns the soil to the center of the lane. Subject to the easement of passage, he may cultivate the soil and take the herbage growing thereon. The public has no right in a highway excepting the right to pass and repass thereon. Subject to the right of mere passage, the owner of the road is still absolute master." *Brooks v. Bess*, 135 Me. 290 (1937) (citing *Stinson v. City of Gardiner*, 42 Me. 248, 254).

Conclusively, the law in Maine is clear. The person receiving a deed with a description of land recited as a lot number according to a recorded plan receives all rights contained within the plan. That includes the existence of and the use of roads appearing on the plan. Secondly, unless clearly ambiguous, no amount of oral evidence can modify or change in any way the written instrument of the deed and the plan to which it refers.

The position of the defendants in the case at hand was presented by a substantial amount of evidence describing conversations with Jason Hughes and whether he acted with authority as a representative of Hughes Lumber explaining the intent of the parties and certain evidence which would work in the favor of the defendants in the right to block the roads. The court does not question the statements were made,

although disputed to some extent at trial, but the issue is to the effect of statements made by persons that would cause the defendants to act in reliance resulting in a justification of a blockage of the roads. This leads us to the second old major principle that governs this case.

The precedent is *Callahan v. Ganneston Park Development Corp.*, 245 A.2d 274, relying on the 1930 case of *Bar Harbor Union River Power Co. v. Foundation Co.*, 129 Me. 81, 149 A. 801 (1930). We know that the law is clear,

> Oral evidence is not admissible to contradict or vary that which a writing expresses. If, in the writing, there be ambiguity, oral evidence is admissible to discover what the contracting parties had in view. Oral evidence, in such a case, does not usurp the authority of the written instrument; it is the instrument which operates; the oral evidence does no more than assist its operation.

Citing *Arnold v. Boulay*, 147 Me. 116, the case discusses "easement by implication based upon estoppel." It further notes that the easement is not based upon a dedication to the public because it is a private right and not dependent on a prospective public use. Quoting from a very early New Jersey case, the court states that the object of the principle is, not to create public rights, but to secure the persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced him to buy portions of a tract made out on the plan indicated." *Lenning v. Ocean City Assoc.*, 41 N.J. (14 Stewart), 606, 7 A. 491.

11

Is the language in the deeds upon which the parties rely to establish their rights to the roads and lands ambiguous? Clearly not, as they make specific reference to a specific plan recited in a public registry and roads existing on the face of the earth. Then, is the plan ambiguous? Are there more than one reasonable interpretations to a person objectively examining the plan and any writings thereon? Here the drafters of the plan answer the question for us. Not only were the roads to exist and be part of the rights incorporated by implication in each deed, but in order to assure that they were to be roads for utilization by persons receiving a deed, they declared that such rights of way through which the roads run are to be 66 feet.

Accordingly, the entry must be:

JUDGMENT FOR THE PLAINTIFFS; it is declared the law that the roads appearing on a plan called "A Proposed Division of Land of West Half of Township 4, Range 16 for Hughes Lumber Company, Inc., Somerset County State of Maine, September 30, 1989, prepared by A.B. Sturgeon, Inc., surveyors and developers, 95 Harlow Street, Bangor, Maine, by John B. Cahoon, registered land surveyor number 324, as recorded in Somerset Registry of Deeds, September 27, 1989, and recorded in Plan File B-89, page 165", are roads as described in note 4 on said plan: "all roads used as property lines and used to provide access to other lots are to be 66 foot right of ways," to which each property owner as recipient of

12

a deed of a lot of land described by specific reference to said plan has full rights and access to displayed roads as a private easement accompanying and part of their deed(s); the defendants, their heirs and assigns and all other persons are hereby ENJOINED from interfering in any way with the rights of passage of other property owners in the western half of Township 4, Range 16, known as Elm Stream Township as to said roads; any and all barriers to passage on said roads shall be removed within 60 days, failure to do so shall incur a CIVIL PENALTY of fifty dollars a day for each day of violation of this order; plaintiffs may recover costs upon application and approval by the court.

Clerk may docket by reference.

DATED: 12-22-15

DONALD H. MARDEN
Superior Court Justice

13